Argued and submitted April 7, affirmed May 12, reconsideration denied July 28, petition for review denied August 24, 1993 (317 Or 485)

Dale BAKER,
*Petitioner,*

*v.*

MARION COUNTY,
a political subdivision of the State of Oregon,
Judy Ficek, Tom Bedell, Robert Payne
and the Butteville Homeowners Association,
an unincorporated association,
*Respondents.*

(92-174; CA A78828)

852 P2d 254

Donald M. Kelley, Silverton, argued the cause for petitioner. With him on the brief was Kelley & Kelley, Silverton.

Jane Ellen Stonecipher, Salem, argued the cause for respondent Marion County. Wallace W. Lien, Salem, argued the cause for respondents Judy Ficek, Tom Bedell, Robert Payne and Butteville Homeowners Association. With them on the brief was Robert C. Cannon, Salem.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Petitioner seeks review of LUBA's affirmance of Marion County's denial of his application for an urban growth boundary (UGB) amendment, which he sought to allow enhanced developmental density on his residential subdivision and to enable him to provide access to an adjacent subdivision. We affirm.

The facts are as stated in LUBA's opinion:

"The subject property is 10.25 acres in size and is zoned and planned [acreage-residential]. Land to the north, west and south is also zoned AR and consists of homesites and small farms. The city limits of the City of Woodburn are to the east of the subject parcel.

"A seven lot residential subdivision has previously been approved by the county on the subject property.

"After petitioner obtained county approval to subdivide the subject property, the owner of the adjacent property located within the city limits to the east of the subject property obtained city approval to subdivide that property (adjacent subdivision). However, the previously approved subdivision on the subject property creates access problems for the adjacent subdivision.

"Petitioner submitted applications to the City of Woodburn for annexation, plan and zone changes and a UGB amendment to allow subdivision of the subject property into more than seven lots, and to provide additional access to the adjacent subdivision. The city approved petitioner's applications. However, pursuant to an intergovernmental agreement with Marion County, the UGB amendment also required county approval. After a public hearing, the county denied petitioner's request for approval of a UGB amendment. This appeal followed."

Goal 14 sets out seven factors that are to be considered in connection with the establishment or change of a UGB:

"(1) Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2) Need for housing, employment opportunities, and livability;

"(3) Orderly and economic provision for public facilities and services;

"(4) Maximum efficiency of land uses within and on the fringe of the existing urban area;

"(5) Environmental, energy, economic and social consequences;

"(6) Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and,

"(7) Compatibility of the proposed urban uses with nearby agricultural activities."

The first two factors are concerned with "need," *i.e.*, the amount of land required for urban uses and growth, and the remaining factors are "locational," *i.e.*, what land to use to accommodate urban uses and growth. *See City of Salem v. Families For Responsible Govt*, 64 Or App 238, 243, 668 P2d 395 (1983), *rev'd on other grounds* 298 Or 574, 694 P2d 965 (1985).

The county determined that petitioner had not demonstrated that the proposed UGB amendment could be justified under either of the need factors. LUBA rejected petitioner's assignments of error directed at those conclusions. With respect to factor 1, LUBA found substantial evidence to support the county's determination that there was abundant land already within the Woodburn UGB that was planned for residential use, and that there was no demonstrated need for additional land.

Petitioner argued that the county erred in applying factor 2, because access to the adjacent subdivision, which is within the UGB, is a "livability" need, in petitioner's view. LUBA responded:

"It may be that a need to provide access to the adjacent subdivision might justify a change in the UGB in order to annex land for a roadway to serve that adjacent subdivision. However, such a need does not necessarily justify including the entire 10.25 acres within the UGB under Goal 14, Factor 2."

LUBA then stated in conclusion:

"Petitioner asserts that the proposal satisfies other Goal 14 factors. However, in the absence of having established an

exception to Goal 14 or compliance with the two 'need' factors of Goal 14, petitioner has failed to establish compliance with applicable standards as a matter of law, and petitioner's additional arguments provide no basis for reversal or remand of the challenged decision."

■    In his brief to us, petitioner makes only one assignment of error, but it embraces two discrete arguments. The first is that "need" is established if either factor 1 or 2 is satisfied. Although he does not take issue with LUBA's conclusion concerning the first factor, petitioner characterizes its ruling regarding the second as "conced[ing] that petitioner has shown that a livability need exists as per Factor (2)." He is wrong for two reasons. First, LUBA did not sustain his challenge to the county's conclusion concerning factor 2. It expressly rejected the challenge, notwithstanding its suggestion that a far more modest amendment than the one petitioner sought *might* pass muster under factor 2. Therefore, contrary to petitioner's understanding, LUBA concluded that the proposed amendment does not satisfy either factor. The second problem with the argument is that, even if the proposal complied with one of the two factors, that would not suffice to show need, at least without appropriate consideration of and weight being accorded to the proposal's failure to satisfy the other factor. The need factors are interdependent and, aside from his mistaken contention that compliance with either one is *per se* sufficient, petitioner does not argue that the county or LUBA misapplied the two factors in combination. *See Benjfran Development v. Metro Service Dist.*, 95 Or App 22, 27, 767 P2d 467 (1989). The premises of petitioner's challenge to LUBA's ruling on the need factors are incorrect, and he shows no error.

■    Petitioner next argues that, even if the proposal was unsupported by a showing of need under factors 1 and 2,

"[LUBA] has erred by not considering factors (3) through (7), the five 'locational' factors of Goal 14. An area may still be included in the UGB if examination of [those] factors shows that area is committed to urban uses."

Petitioner relies on our statement in *City of Salem v. Families For Responsible Govt, supra*:

"As a general rule, a local government is not permitted to establish an urban growth boundary containing more land

than the locality 'needs' for future growth. However, in certain limited circumstances, an urban growth boundary may contain extra land. When existing urban development or existing public facilities have 'committed' an 'unnecessary' piece of land to urban use, the local government may include that land in the boundary in order to avoid illogical development or service patterns. \* \* \* To justify such a boundary, the local government must demonstrate, through the application of Goal 14's locational factors, that the land in question is in fact 'committed' to urban use." 64 Or App at 243. (Citation omitted.)

To the same effect, see *Halvorson v. Lincoln County*, 82 Or App 302, 728 P2d 77 (1986).

LUBA *did* address the locational factors, and held that, given the failure of the proposal to satisfy the need factors, the locational factors could not avail petitioner. However, petitioner's point appears to be that LUBA's conclusion on that score is inconsistent with *Halvorson* and *City of Salem*. Respondents answer, *inter alia*, that petitioner did not raise the argument before LUBA that he now makes to us. They contend that the cited decisions contemplate that only "unneeded" land that is ·*committed* may be included in a UGB, and that petitioner did not raise the commitment issue before LUBA. In respondents' view, factors 3 through 7 are irrelevant to petitioner's proposal, unless they pertain to whether the property is committed to urban development or use, and petitioner raised no commitment issue in the LUBA proceeding.

Petitioner discussed factors 3 through 7 in his third assignment of error to LUBA, which is captioned:

"The Marion County Board of Commissioners erred in that there is not substantial evidence in the record to support its finding that there has been no compliance with the seven factors of Goal 14."

His supporting argument for that assignment is, as the caption indicates, a substantial evidence argument concerning each of the seven factors, and the concept of "commitment" is to be found only anecdotally, if at all, in the argument. Moreover, petitioner directed no challenge, let alone an assignment, against the county's finding:

"The applicants point to the extension of adequately sized roads, sewer and water services to the boundary of the

subject property as evidence that the subject property is committed to urban development. However, the fact that the city has provided for the possibility of future expansion of the UGB to include this property at a time when the need arises does not commit the land at this time to urban development. The County in approving the Seven Oaks Subdivision on the subject property also considered the future possibility of the property being moved into the UGB when it required a redevelopment plan consistent with urban densities. The redevelopment plan and the provision of adequately sized services is a wise planning tool but in and of itself does not commit the property to urban development nor does it justify expansion of the UGB prior to there being a need for additional residential land."[1]

Similarly, in his argument to us, petitioner makes passing use of the word "commitment," but does not tie it to any specifics in the county record, the LUBA record, his presentation before those bodies or the facts of this case. The decisive discussion in the record pertaining to whether the land in question is committed to urban use or development is in the county's unchallenged finding that it is not.

However, petitioner appears to understand *City of Salem v. Families For Responsible Govt, supra,* and *Halvorson v. Lincoln County, supra,* as holding that the locational factors must be applied to and can form a basis, irrespective of commitment, for approving a UGB proposal that does not satisfy the need factors. He is not correct. We made it clear in *City of Salem* that, as a rule, a UGB may contain only "needed" land; the only exception is for land that goes beyond the amount needed but is committed to urban development or use. *City of Salem* and *Halvorson* do not imply that the locational factors can support the inclusion of "unneeded" land in a UGB *unless* they show that it is committed. Again, petitioner does not demonstrate that LUBA erred.

Affirmed.

---

[1] That finding, as well as some of the others made by the county, was based on the considerations embodied in the locational factors. Moreover, in one of its findings, the county quoted *all* of the Goal 14 factors, and concluded that the "record does not show compliance with these factors."