Argued and submitted March 29, on petitions, reversed and remanded for reconsideration; cross-petition dismissed as moot September 1, 2004

Janet MILNE,
Paul Satter,
Riverside Neighborhood Association,
and 1000 Friends of Oregon,
*Petitioners - Cross-Respondents,*

*v.*

CITY OF CANBY,
*Respondent,*
*and*

NORTHWOOD INVESTMENTS,
*Respondent - Cross-Petitioner.*

2003-102; A123691

96 P3d 1267

Mark J. Greenfield argued the cause and filed the brief for respondent - cross-petitioner Northwood Investments.

John H. Kelley, Canby City Attorney, waived appearance for respondent City of Canby.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Leeson, Judge pro tempore.

DEITS, C. J.

## DEITS, C. J.

The City of Canby (city) amended its urban growth boundary (UGB) to include approximately 30 acres of property that was within the city limits and entirely surrounded by property in the UGB. The city also amended its comprehensive plan and zoning map to redesignate the property from Agriculture to Low Density Residential. LUBA affirmed the city's decisions. *Milne v. City of Canby*, 46 Or LUBA 213 (2004). We reverse and remand.

We take the facts from LUBA's order.

"The subject property is approximately 30 acres in size and lies entirely within the City of Canby city limits. It is an island of land that is excluded from, but entirely encircled by[,] the city's UGB. * * * To the east, west, and south of the property are developed residential subdivisions. A church adjoins the property to the south. To the north are larger residential lots that are developed with residences. There are public facility connections for water and sewer at numerous locations on all sides of the property. * * * The soils on the property are high-value class II soils. The property has been used for many different agricultural purposes over the years, and is currently used for production of row crops and flowers. Prior to the challenged decision, the property was designated Agricultural on both the city's comprehensive plan and zoning maps. The challenged decision changes the comprehensive plan and zoning map designations from Agriculture to Low Density Residential.

"* * * * *

"Due to the nature of the parties' arguments, some discussion of the property's planning and zoning history is warranted. In 1982, the subject 30 acres were leased by the Industrial Forestry Association (IFA) as part of a larger 104-acre tree farm operation. When the City of Canby originally requested acknowledgment of its UGB in 1982, the subject property was included within the proposed UGB. The Land Conservation and Development Commission (LCDC) found that the city's proposed UGB included more land than was needed. In response to LCDC's concerns, the city removed all IFA-operated properties from the proposed UGB. IFA did not object to having the property removed

from the proposed UGB. Intervenor[, Northwood Investments (Northwood),] purchased the property in 1990 and at that time submitted an application to have the property included within the UGB. That application was denied because the city found that there was no need for additional residential land within the UGB at that time. In 1993, the city approved an application to expand the UGB to include the property, finding that there was a demonstrated need for additional residential land. The city's decision was appealed to LUBA and we remanded the decision, finding that the city failed to demonstrate that there was a need for additional residential land. *Simnitt Nurseries v. City of Canby*, 27 Or LUBA 468 (1994). After that decision was issued, [Northwood] abandoned its attempt to include the property within the UGB. In 2003, [Northwood] once again applied to have the property included within the UGB. The 2003 application makes no attempt to demonstrate that the 30 acres are needed land for residential use. Instead, the 2003 application takes the position that the 30 acres should be included in the UGB because they are 'committed' to urban uses. The city approved the application[.]"

*Milne*, 46 Or LUBA at 215-17 (footnotes omitted).

■     We begin by addressing the jurisdictional issue whether petitioners and cross-petitioner have standing to seek judicial review of LUBA's order. Petitioners on review—Janet Milne, Paul Satter, Riverside Neighborhood Association, and 1000 Friends of Oregon—and cross-petitioner on review—Northwood have statutory standing because they were all parties before LUBA. *See* ORS 197.850(1) ("Any party to a proceeding before the Land Use Board of Appeals under ORS 197.830 to 197.845 may seek judicial review of a final order issued in those proceedings."); OAR 661-010-0010(11) (providing that, generally, a party to an appeal to LUBA is "the petitioner, the governing body, and any person who intervenes as provided in OAR 661-010-0050").

That conclusion, however, does not end our inquiry because, even if a party has statutory standing, "the courts *always* must determine that the constitutional requirements of justiciability are satisfied." *Utsey v. Coos County*, 176 Or App 524, 548, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003) (emphasis in original). Specifically, "the person or persons *invoking the jurisdiction of the court* must establish that

a decision would have a practical effect on him or her."[1] *Just v. City of Lebanon (A122517)*, 193 Or App 132, 147, 88 P3d 312, *rev allowed*, 337 Or 247 (2004) (emphasis in original).

Based on our review of the record, we understand that petitioner Satter owns and occupies a property within 200 feet of the subject property. For that reason, it is apparent that a decision in this case to include the subject property within the UGB and to rezone the property from Agricultural to Low Density Residential use has a practical effect on his interests. Because Satter has standing and he and the other petitioners make the same arguments in this review proceeding, it is immaterial whether the other petitioners independently have constitutional standing, and we do not consider that issue further.[2] *See id.* at 135 n 2. We also conclude that cross-petitioner Northwood has constitutional standing because it is the applicant and a decision will have a practical effect on its interests. Having determined that Satter and Northwood have standing to invoke the jurisdiction of this court, we turn to the merits of the case.

■   The dispositive issue on review is whether LUBA erred in concluding that the city could amend its UGB to include the subject property without considering the seven

---

[1] As we have previously explained, under our holding in *Utsey*, this court must determine whether a petitioner has constitutional standing. For that reason, the petitioner must demonstrate his or her constitutional standing. *At this point*, as a prudential matter, a petitioner also should include citations to the portions of the record that support his or her contentions in the statement of the case in the opening brief. LUBA records may be quite lengthy, and citations to the appropriate portions of the record will assist this court in quickly determining whether the petitioner has standing.

We note, however, that a proposed amendment to the Oregon Rules of Appellate Procedure specifies a new procedure for identifying *in the petition for judicial review* evidence in the record that demonstrates a petitioner's constitutional standing and a new procedure for submitting evidence of constitutional standing *with the petition for judicial review*. If adopted, the new rule will be effective in January 2005.

[2] *See deParrie v. State of Oregon*, 133 Or App 613, 617, 893 P2d 541, *rev den*, 321 Or 560 (1995) (reasoning that, where at least one of the plaintiffs has standing and the legal positions of the other plaintiffs in the same action are exactly the same as the plaintiff with standing, "it is immaterial whether the other plaintiffs independently have standing"); *Thunderbird Motel v. City of Portland*, 40 Or App 697, 704, 596 P2d 994, *rev den*, 287 Or 409 (1979) (reasoning that, where one or more of the plaintiffs have standing to raise the matters presented on appeal, we will address the merits).

establishment factors listed in Statewide Land Use Planning Goal 14.[3] In reaching its conclusion, LUBA reasoned as follows:

> "Goal 14 provides that 'establishment and change' of a UGB is to be based upon consideration of seven factors. The seven factors are collectively referred to as the 'establishment' factors. *1000 Friends of Oregon v. LCDC (Curry County)*, 301 Or 447, 455, 724 P2d 268 (1986). The first two factors are known as the 'need' factors, while the third through seventh factors are known as the 'locational' factors. *Residents of Rosemont v. Metro*, 173 Or App 321, 327, 21 P3d 1108 (2001). Generally, a local government must apply the 'need' factors and establish a need for land before it may amend its UGB to include that land. *Baker v. Marion County*, 120 Or App 50, 54, 852 P2d 254, *rev den*[,] 317 Or 485 (1993). In the present case, however, the city utilized a narrow exception to that general rule for 'unneeded but committed' lands.[4] Under that exception, in certain limited

---

[3] Goal 14 concerns urbanization and provides, in pertinent part:

"Urban growth boundaries shall be established to identify and separate urbanizable land from rural land. Establishment and change of the boundaries shall be based upon considerations of the following factors:

"(1) Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;

"(2) Need for housing, employment opportunities, and livability;

"(3) Orderly and economic provision for public facilities and services;

"(4) Maximum efficiency of land uses within and on the fringe of the existing urban area;

"(5) Environmental, energy, economic and social consequences;

"(6) Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and,

"(7) Compatibility of the proposed urban uses with nearby agricultural activities.

"The results of the above considerations shall be included in the comprehensive plan. In the case of a change of a boundary, a governing body proposing such change in the boundary separating urbanizable lands from rural land, shall follow the procedures and requirements as set forth in the Land Use Planning goal (Goal 2) for goal exceptions."

[4] Use of the term "exception" may be confusing in this context because it is a term of art. In *1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 457, 724 P2d 268 (1986), the Supreme Court explained that, "[i]n order to allow land use which any goal would prohibit, a local government must take an 'exception' to that goal." Unlike an "exception," the "unneeded but committed" doctrine allows a local government to demonstrate compliance with Goal 14 without demonstrating that the need factors of the goal have been satisfied. Thus, throughout this opinion, we refer to the "unneeded but committed" doctrine.

circumstances, a local government does not have to demonstrate that land is needed under the Goal 14 'need' factors to include that land within a UGB. Petitioners, among other things, challenge the continuing validity of the exception for 'unneeded but committed' lands and its application in the present case.

"The exception for 'unneeded but committed' lands appears to have been first articulated in an LCDC continuance order. That continuance order was recognized and discussed by the Court of Appeals in *City of Salem v. Families for Responsible [Govt]*, 64 Or App 238, 668 P2d 395 (1983), *rev'd and rem'd on other grounds*, 298 Or 574, 694 P2d 965[, *on remand*, 73 Or App 620, 700 P2d 268 (1985)]. In that case, 1000 Friends of Oregon and others appealed LCDC's acknowledg[ment] of the Salem Area Comprehensive Plan, which included the City of Salem's UGB. The Court of Appeals rejected LCDC's approval of several areas for which need had not been demonstrated, but affirmed LCDC's approval of one area of 'unneeded but committed' lands. The court described the exception for 'unneeded but committed' land as follows:

> " 'As a general rule, a local government is not permitted to establish an urban growth boundary containing more land than the locality "needs" for future growth. However, in certain limited circumstances, an urban growth boundary may contain extra land. When existing urban development or existing public facilities have "committed" an "unnecessary" piece of land to urban use, the local government may include that land in the boundary in order to avoid illogical development or service patterns. * * * To justify such a boundary, the local government must demonstrate, through the application of Goal 14's locational factors, that the land in question is in fact "committed" to urban use.' 64 Or App at 243.

"The next case to discuss 'unneeded but committed' lands was *Collins v. LCDC*, 75 Or App 517, 707 P2d 599 (1985). In that case, the court considered an appeal of LCDC's approval of the City of Jacksonville's UGB. The city included additional lands in the UGB under the 'unneeded but committed' exception. Although the court reversed and remanded the decision for inadequate findings, it did recognize the exception for 'unneeded but committed' lands.

"The first two cases to consider 'unneeded but committed' lands both involved the initial *establishment* of a city's UGB. The first case to extend that exception to a UGB *amendment* was *Halvorson v. Lincoln County*, 14 Or LUBA 26 (1985). In that case, while holding that the county's findings were inadequate to demonstrate the subject lands were committed to urban uses so that they could be included within the UGB of the City of Depoe Bay, LUBA recognized that such a showing would obviate any requirement to consider the 'need' factors of Goal 14.

" 'While these facts may illustrate the property is not available for resource uses, they fall short of an adequate demonstration the property is committed by "existing urban development or existing public facilities" to urban use, i.e. uses of a kind and intensity characteristic of urban development in the City of Depoe Bay. *City of Salem * * **. Without such a demonstration, the predicate for adjusting the UGB without consideration of [Goal 14] factors 1 and 2 has not been established.' 14 Or LUBA at 32 (emphasis in original deleted).

"After we remanded the decision, the county once again approved the UGB amendment, the petitioners once again appealed the decision to LUBA, we once again remanded the decision for failing to establish that the subject lands were committed to urban uses, [*Halvorson v. Lincoln County*, 14 Or LUBA 730 (1986),] and the petitioners appealed LUBA's decision to the Court of Appeals. While not finding it necessary to address all of the parties' arguments, the court nonetheless recognized that the 'unneeded but committed' policy could serve to allow an *amendment* of an existing UGB.

" 'If an area does not qualify for inclusion in an UGB because it does not satisfy the first two—"need"—factors of Goal 14, it may still be included if an examination of the remaining five—"locational"—factors shows that it is committed to urban uses. * * * The local government must balance those factors in order to determine whether, on the whole, the area is committed. The process is not a mechanical one of adding so many * * * points for one factor and subtracting so many for another. Rather, the overall picture must show commitment.' *Halvorson v. Lincoln County*, 82 Or App 302, 305, 728 P2d 77 (1986).

"In the years since the *Halvorson* opinions, neither the Court of Appeals nor we have discussed the exception for 'unneeded but committed' lands in great detail. One Court of Appeals case and one LUBA case, however, have noted the existence and apparent continued validity of the exception. *See Baker*, 120 Or App at 56 (recognizing the exception but noting that petitioner had not raised that issue below); *Friends of Linn County v. Linn County*, 41 Or LUBA 342, 346-47 (2002) (recognizing the exception but finding that commitment to urban use was not shown).

"Petitioners urge us to overrule or limit the previously discussed cases and hold that the exception for 'unneeded but committed' lands does not apply to UGB *amendments*. According to petitioners, both LUBA and the Court of Appeals 'took a wrong turn' in extending the exception for 'unneeded but committed' lands to decisions to amend a UGB as opposed to decisions to initially establish a UGB. Petitioners are correct that the *City of Salem* and *Collins* cases involved decisions that initially established UGBs. Petitioners are also correct that the extension of the exception for 'unneeded but committed' lands to UGB amendments appears to have occurred without the Court of Appeals or LUBA ever considering the arguments currently made by petitioners.

"While the Court of Appeals may not have considered the precise arguments presented by petitioners in the present case, we do not agree that the language in the court's *Halvorson* opinion recognizing the exception was mere *dicta*. The court clearly believed that the exception for 'unneeded but committed' lands was a valid method of amending a UGB, without regard to the Goal 14 'need' factors. If it had not so believed, the court would have had no reason to consider whether the property was committed to urban uses. We also note that the seven Goal 14 factors apply to both 'establishment and change' of UGBs. We see no reason why the exception for 'unneeded but committed' lands should apply only to decisions that establish a UGB. If the exception for 'unneeded but committed' lands is to be declared invalid or limited, the Court of Appeals is the appropriate body to do so."[5]

---

[5] By footnote, LUBA also rejected petitioners' argument that this court's decision in *Halvorson* is factually distinguishable because the land in that case had been committed to urban uses before Goal 14 was promulgated.

*Milne,* 46 Or LUBA at 219-23 (footnotes and some citations omitted; emphasis, some omissions, and fourth set of brackets in original).

In their first assignment of error on review, petitioners contend that LUBA erred in concluding that the city properly amended its UGB to include the subject property without determining that it had a need for the property, as required by Goal 14. Specifically, petitioners contend that LUBA's decision is inconsistent with the text of Goal 14, which requires that all seven establishment factors be considered when a local government changes a UGB. Additionally, petitioners assert that Goal 14's purpose is to ensure that changes in UGBs are based on need. *See* 195 Or App at 6 n 3. They argue that LUBA's conclusion "undermine[s]" that basic purpose because

> "a local government may consciously and deliberately commit land to urban use by surrounding the high-value farmland with urban development creating conflicts with the pre-existing farm use, stub out urban services adjacent to the agricultural lands and then include that agricultural land within the UGB upon a finding that it is committed and regardless of whether that land is needed for urban use."

According to petitioners, the periodic review process or the taking of exceptions to the pertinent goals are mechanisms that allow UGB amendments under the circumstances in this case.

Petitioners acknowledge that, in dispensing with the need requirements of Goal 14, LUBA relied on *Halvorson v. Lincoln County,* 82 Or App 302, 728 P2d 77 (1986), a case in which this court extended the "unneeded but committed" land doctrine to a UGB amendment such as the one in this case. Petitioners contend, however, that *Halvorson* was wrongly decided and should be overruled because it was "a material departure from the original LCDC Continuance Order that is contrary to the language of Goal 14 and previous case law."

Northwood agrees that the city relied on this court's holding in *Halvorson* to amend its UGB without demonstrating that the need factors of Goal 14 had been satisfied. In its

answering brief, Northwood argues that petitioners did not raise before the city the issue whether this court incorrectly extended the "unneeded but committed" doctrine to UGB amendments in *Halvorson*. For that reason, Northwood contends that LUBA should not have considered that issue. Northwood also raises that contention in its cross-petition for judicial review. Alternatively, Northwood contends that this court's decision in *Halvorson* was correctly decided and that, based on the holding in that case, the city could amend its UGB to include the subject property without demonstrating that the need factors of Goal 14 had been satisfied. Respondent cautions that we should be

> "particularly reluctant not to adhere to the doctrine of *stare decisis* in land use matters involving agency rules because of the opportunities LCDC has, through goal amendment or rulemaking, to overturn an interpretation it deems in conflict with its goals or rules. Here, the 'unneeded but committed' exception has been around for 20 years with no effort by LCDC to eliminate, limit or otherwise amend it. If anything, the contrary has happened with LCDC's adoption of OAR 660-014-0030 and its incorporation of that standard in OAR 660, Division 4 through OAR 660-004-0010(1)(c) and -0022(1)."

In sum, based on its contention that *Halvorson* was correctly decided, Northwood contends that the city's action came within the "unneeded but committed" exception to Goal 14.

As have the parties, we focus our analysis on whether this court's extension of the "unneeded but committed" doctrine to UGB amendments in *Halvorson* is supported by Goal 14 or other pertinent sources of law. Under the doctrine of *stare decisis*, we adhere to our prior decisions "unless error is plainly shown to exist." *Newell v. Weston*, 156 Or App 371, 380, 965 P2d 1039 (1998), *rev den*, 329 Or 318 (1999) (internal quotation marks omitted).

Northwood first asserts that we need not decide whether, in *Halvorson*, this court incorrectly extended the "unneeded but committed" doctrine to UGB amendments because petitioners did not preserve that issue and LUBA should not have considered it. LUBA rejected Northwood's preservation argument, reasoning that, "[w]hile it is true

that petitioners did not make the precise legal arguments below that they advance on appeal, they did make the argument that the property could not be included within the UGB under the exception. That is sufficient to preserve the issue for our review." *Milne*, 46 Or LUBA at 220 n 6. We agree with LUBA's reasoning and do not discuss Northwood's contention further. In light of that disposition, it is unnecessary for us to address Northwood's cross-petition for review, which raises the same preservation issue. Accordingly, we dismiss the cross-petition as moot and turn to the merits of the issue.

We begin with a discussion of the evolution of the "unneeded but committed" doctrine. The parties appear to agree that the genesis of the "unneeded but committed" doctrine was a 1979 LCDC Continuance Order that was issued during the acknowledgment process for the Metropolitan Service District.[6] An issue before LCDC was whether the district could *establish* a UGB that contained unneeded land. According to LCDC, at that point, it had "not previously interpreted Goal 14 as allowing a vacant land 'surplus' of any kind." Continuance Order at 9. LCDC recognized, however, that Goal 14 "cannot ignore the past" and that "[e]xisting urban development has established an existing urban form which cannot be changed by a wave of a wand or by the drafting of findings." *Id.* at 11. LCDC ultimately concluded that,

> "if [the district] finds it impossible because of pre-Goal urban land commitments to establish a year 2000 boundary and simultaneously promote important Goal 14 locational values, the Commission must and will app[r]ove a larger boundary, provided [the district] has also taken all available measures to achieve the purposes of Goal 14 as described in Part II above."

*Id.* at 11-12.

This court applied the "unneeded but committed" doctrine to the establishment of UGBs in *City of Salem v. Families for Responsible Govt*, 64 Or App 238, 668 P2d 395 (1983), *rev'd and rem'd on other grounds*, 298 Or 574, 694 P2d

---

[6] Petitioners attached a copy of that order to their briefs to LUBA. Northwood moved to strike the order that was addressed in petitioners' brief. LUBA denied Northwood's motion and took official notice of the order. That ruling has not been challenged on review.

965, *on remand*, 73 Or App 620, 700 P2d 268 (1985), and *Collins v. LCDC*, 75 Or App 517, 707 P2d 599 (1985). In *City of Salem*, 1000 Friends argued that "LCDC erred by approving a UGB containing more land than the city needs for future growth, without adopting findings to demonstrate that the excess lands are 'committed' to urban use." 64 Or App at 242. On review, the validity of the "unneeded but committed" doctrine, which we explained as follows, was not at issue:

> "As a general rule, a local government is not permitted to establish an urban growth boundary containing more land than the locality 'needs' for future growth. However, in certain limited circumstances, an urban growth boundary may contain extra land. When existing urban development or existing public facilities have 'committed' an 'unnecessary' piece of land to urban use, the local government may include that land in the boundary in order to avoid illogical development or service patterns. * * * Continuance Order, *supra*, at 12. To justify such a boundary, the local government must demonstrate, through the application of Goal 14's locational factors, that the land in question is in fact 'committed' to urban use."

*Id.* at 243. We applied the doctrine in concluding that LCDC's findings did not support its conclusion that certain areas are committed to urban use.

We again applied the "unneeded but committed" doctrine in *Collins*. The application of the "unneeded but committed" doctrine to the initial establishment of a UGB does not appear to have been challenged in that case. At issue was whether LCDC violated "Goal 14 by approving an urban growth boundary * * * with nearly 700 acres of land that are not needed for projected expansion." *Collins*, 75 Or App at 519. LCDC relied

> "on the maps provided by the city, on Goal 14's seven factors for determining the size and location of an UGB and on this court's statement that a locality may include more land than is needed in the UGB '[w]hen existing urban development or existing public facilities have "committed" an "unnecessary" piece of land to urban use * * * in order to avoid illogical development or service patterns.' *City of Salem* * * *."

*Collins*, 75 Or App at 525 (bracketed material and first omission in original). This court concluded that "[s]ome areas of commitment do not justify inclusion of all of the territory in the UGB." *Id.* at 528 (emphasis in original).

LUBA and this court extended the "unneeded but committed" doctrine to UGB amendments in *Halvorson*, the case on which Northwood relies in this case. In *Halvorson*, the petitioners sought review of a LUBA order concerning a UGB amendment. "LUBA rejected [the] petitioner[s'] claim that the county had failed to show that the land was committed to urban development under the 'locational' factors of Goal 14." *Halvorson*, 82 Or App at 304. The parties agreed that the county could not justify the amendment on the basis of need. *Id.* at 304 n 1. Instead, the petitioners contended that, because there had been no demonstration that the subject property had been committed to urban development, LUBA could not approve the amendment where need had not been demonstrated. This court determined that it was unnecessary for it to resolve the dispute as to whether the property was "committed" because, as LUBA had determined, the cases had to be remanded so that the county could address the economic, social, environmental, and energy consequences of the change.

In *Halvorson*, this court did not address the validity of the "unneeded but committed" doctrine in the context of a UGB amendment. However, as LUBA recognized in its order in this case, this court, in *Halvorson*, "clearly believed that the exception for 'unneeded but committed' lands was a valid method of amending a UGB, without regard to the Goal 14 'need' factors." *Milne*, 46 Or LUBA at 223. Moreover, in refusing to resolve the parties' dispute and affirming LUBA's remand to the county for economic, social, environmental, and energy findings because those findings might bear on the issue of whether the property had been committed for urban uses, we clearly acknowledged that the "unneeded but committed" doctrine applied to that UGB amendment.

This court also acknowledged the "unneeded but committed" doctrine in *Baker v. Marion County*, 120 Or App 50, 852 P2d 254 (1993). In that case, the petitioner sought review of LUBA's order affirming the county's denial of his

requested UGB amendment. The petitioner argued that, even if his proposal was unsupported by a demonstration of Goal 14's need factors, LUBA should have considered Goal 14's locational factors and, under *City of Salem* and *Halvorson*, should have concluded that the land was committed to urban uses. In other words, the petitioner asserted that the county should have amended its UGB because the land was "unneeded but committed." This court concluded that the petitioner had not asserted before LUBA that the "unneeded but committed" doctrine applied, because he had not raised the issue whether the land was committed to urban uses. We concluded:

> "[P]etitioner appears to understand *City of Salem* * * * and *Halvorson* * * * as holding that the locational factors must be applied to and can form a basis, irrespective of commitment, for approving a UGB proposal that does not satisfy the need factors. He is not correct. We made it clear in *City of Salem* that, as a rule, a UGB may contain only 'needed' land; the only exception is for land that goes beyond the amount needed but is committed to urban development or use. *City of Salem* and *Halvorson* do not imply that the locational factors can support the inclusion of 'unneeded' land in a UGB *unless* they show that it is committed."

*Baker*, 120 Or App at 56 (emphasis in original).

As in *Halvorson*, this court in *Baker* did not address the validity of the "unneeded but committed" doctrine in the context of a UGB amendment. However, we rejected the petitioner's argument that *City of Salem* and *Halvorson* required the approval of a UGB amendment where no need and no commitment are demonstrated but the amendment is supported by the locational factors of Goal 14. Based on our understanding of the "unneeded but committed" doctrine as explained in *City of Salem* and *Halvorson*, this court concluded that, because the petitioner had not raised the issue whether the land was committed to urban uses, he had not preserved the issue whether the "unneeded but committed" doctrine applied.

For those reasons, even though we have not expressly addressed the validity of the "unneeded but committed" doctrine, we have clearly acknowledged its existence

and applicability to UGB amendments. Moreover, our understanding of the requirements of the doctrine drove our holdings in *Halvorson* and *Baker*. On further consideration of this issue, which is directly presented to us in this case, we conclude that this court was incorrect in extending the "unneeded but committed" doctrine to UGB amendments. The flaw in our extension of the "unneeded but committed" doctrine to such cases was that it simply was not supported by the language of Goal 14 or LCDC's Continuance Order.

As we explained above, *see* 195 Or App at 12, LCDC created the "unneeded but committed" doctrine in the Continuance Order for cases involving the *establishment* of a UGB. The Continuance Order reflects LCDC's recognition that, in the context of establishing a boundary, preexisting urban development must be considered. LCDC did not, in that Continuance Order or any other order of which we are aware, extend the "unneeded but committed" doctrine to cases involving a UGB *amendment*. Further, the text of Goal 14 unambiguously provides that "[e]stablishment and *change* shall" be based on all seven factors (*i.e.*, the two need factors and the five locational factors). *See* 195 Or App at 6 n 3 (quoting text of Goal 14) (emphasis added). Nothing in the text of Goal 14 authorizes the "unneeded but committed" doctrine as a mechanism by which a local government is relieved from the requirement of considering all of the seven Goal 14 factors in a decision to amend an existing UGB. Thus, neither the Continuance Order nor Goal 14 supports our extension of the "unneeded but committed" doctrine to UGB amendments.

Northwood asserts that this court's extension of the "unneeded but committed" doctrine to UGB amendments in *Halvorson* finds " 'doctrinal support' " in the existence of various administrative rules concerning exceptions. *See, e.g.*, OAR 660-004-0010(1)(c)(B); OAR 660-004-0022; OAR 660-014-0030; OAR 660-014-0040.[7] There are two problems, however, with Northwood's reliance on those administrative

---

[7] OAR 660-004-0010(1)(c)(B), OAR 660-004-0022, OAR 660-014-0030, and OAR 660-014-0040 were amended effective May 2004. The parties did not inform us that the rules had been amended and have not asserted that those amendments affect the issues in this case. Because the content of the prior and current versions of the rules is irrelevant to our analysis of the issues in this case, we do not address the 2004 amendments.

rules. First, *Halvorson* and *Baker* purport to be based on our prior case law (*e.g.*, *City of Salem*) that was based on the Continuance Order, rather than on any administrative rule promulgated by LCDC. Second, LCDC has the authority to promulgate rules and land use policies that it considers necessary to carry out ORS chapter 197, governing land use. ORS 197.040; *see also* ORS 197.736 (authorizing LCDC to amend and adopt rules to implement ORS 197.732, the statute governing goal exceptions). Thus, the rules Northwood cites reflect the exercise of LCDC's policymaking authority to specify the circumstances under which an exception to Goal 14 may be taken. Even if those rules permitted UGB amendments where the property was unneeded, their existence does not authorize this court to create its own "unneeded but committed" doctrine for UGB amendments, as we did in *Halvorson*. This court does not have authority to make such a policy decision. As petitioners indicate, "[a] judicially created exception process should not trump the process created through authorized rule making."

Relatedly, Northwood asserts that LUBA's order may be affirmed on different grounds—that is, compliance with OAR 660-014-0030, one of the rules pertaining to an exception standard.[8] According to Northwood, "[n]either [it]

---

[8] In *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), the Supreme Court explained the right-for-the-wrong-reason doctrine as follows:

"As developed by this court's decisions, the 'right for the wrong reason' principle permits a reviewing court—as a matter of discretion—to affirm the ruling of a lower court on an alternative basis when certain conditions are met. The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance. The second condition is that the decision of the lower court must be correct for a reason other than that upon which the lower court relied. Third, and finally, the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance."

(Emphasis in original.)

nor the City directly addressed standards in OAR 660-014-0030 because they were relying on the holding in *Halvorson* and the doctrine of *stare decisis.*" However, as Northwood explains, "[a]lthough they do not do so directly, the City's findings address the relevant standards in OAR 660-014-0030(3) and hence provide a separate basis for approval by this Court. If the standards in OAR 660-014-0030(5) should also apply * * *, the findings again are sufficient to show they are met." Northwood concludes that "[t]his court should not penalize [it and the city] for relying on [the court's] holding in *Halvorson*, which is directly on point" and that "[t]his is particularly so where the findings are adequate to show compliance with a standard that clearly leads to the same result."

Northwood does not address whether the requirements from *Outdoor Media Dimensions Inc.* have been satisfied. In particular, it does not explain the reason that the factual record would be materially the same as would have been developed had the issue of compliance with OAR 660-014-0030 been raised before the city. For that reason, we reject Northwood's right-for-the-wrong-reason argument.

Finally, Northwood argues that it and the city

"followed the requirements of Goal 14 and took the exception that Goal 14 requires to change an established UGB. The only thing that they did not do was apply Goal 14 factors 1 and 2 (although they 'considered' these 'factors' and explained why they were inapplicable in the application and findings * * *). Under *Halvorson*, that was not necessary."

Again, Northwood acknowledges that its argument is premised on the assumption that *Halvorson* was correctly decided. Because we have concluded that that premise is incorrect, we reject Northwood's argument that it in fact took an exception to Goal 14.

For all of those reasons, we conclude that this court's decisions in *Halvorson* and *Baker* must be overruled to the extent that the court indicated that the "unneeded but committed" doctrine applied to UGB amendments. That does not necessarily mean, however, that the city may not convert the disputed property here from rural to urbanizable land without demonstrating that all seven factors of Goal 14 (*i.e.*, the

two need factors and the five locational factors) are satisfied. In the absence of a change in the governing law, it is possible that the city may use existing mechanisms for amending a UGB—that is, take an exception to Goal 14 as authorized by LCDC or use the periodic review process in which all of the goals and areas of jurisdiction are considered.

In sum, we conclude that LUBA's decision affirming the city's amendment to its UGB, which was based on *Halvorson*, was unlawful in substance. *See* ORS 197.850(9) (authorizing this court to reverse or remand an order if it finds "[t]he order to be unlawful in substance"). Because of our disposition, it is unnecessary to address the other arguments raised by the parties in petitioners' first assignment of error. It is also unnecessary for us to address petitioners' second assignment of error concerning whether the locational factors of Goal 14 were satisfied.

On petitions, reversed and remanded for reconsideration; cross-petition dismissed as moot.