EGAN, C. J.
*497 This case involves review of a decision of the Land Use Board of Appeals (LUBA). In 2017, the City of Klamath Falls approved an urban growth boundary (UGB) amendment that added 22.7 acres of land owned by Badger Flats, LLP, to the urban area that is included within the boundary.[1] The Department of Land Conservation and Development (DLCD) appealed that decision to LUBA asserting, among other things, that, in the circumstances of this case, the city's approval of the UGB amendment was contrary to Statewide Planning Goal 14. On appeal, LUBA agreed in part and disagreed in part with DLCD's challenges to the city's decision. DLCD seeks judicial review of LUBA's final order,[2] raising two assignments of error *327 in which it challenges LUBA's application of Goal 14 to this case. As explained below, on review to determine whether LUBA's order is "unlawful in substance," ORS 197.850(9)(a), we conclude that DLCD's first assignment of error is well-taken and, therefore, reverse and remand on DLCD's cross-petition.[3]
We begin by setting forth the legal standards for UGB amendments that are relevant to the issue before us on review. ORS 197.175(1) requires cities and counties to exercise their planning and zoning responsibilities in accordance with state land use statutes and the statewide planning goals approved by the Land Conservation and Development Commission (LCDC). "[W]hen a city amends its comprehensive plan, including any amendment to its UGB, the city *498 must justify the change as being consistent with the LCDC goals, except to the extent that compliance with a goal is excused by an exception to [the goal's] application." 1000 Friends of Oregon v. LCDC , 244 Or. App. 239, 243, 259 P.3d 1021 (2011) ; see also OAR 660-024-0020(1) (with exceptions that are not relevant in this case, "[a]ll statewide goals and related administrative rules are applicable when establishing or amending a UGB").
"Goal 14 (Urbanization), OAR 660-015-0000(14), provides particular standards for setting or changing a UGB."[4] 1000 Friends of Oregon , 244 Or. App. at 243, 259 P.3d 1021. In part, Goal 14 requires that
"Establishment and change of urban growth boundaries shall be based on the following:
"(1) Demonstrated need to accommodate long range urban population, consistent with a 20-year population forecast coordinated with affected local governments; and
"(2) Demonstrated need for housing, employment opportunities, livability or uses such as public facilities, streets and roads, schools, parks or open space, or any combination of the need categories in this subsection (2).
"In determining need, local government[s] may specify characteristics, such as parcel size, topography or proximity, necessary for land to be suitable for an identified need.
"Prior to expanding an urban growth boundary, local governments shall demonstrate that needs cannot be reasonably accommodated on land already inside the urban growth boundary."
With that background in mind, we turn to the facts, which are undisputed and are set forth in LUBA's opinion. The Klamath Falls UGB includes approximately 24,000 acres; within the city limits there are 4,322 developed acres and 10,250 undeveloped acres. The urban area within the *499 Klamath Falls UGB has adequate capacity to satisfy the city's urban land needs for the next 20 years.
In 2009, the city had an Economic Opportunities Analysis (EOA) prepared; the city adopted the EOA by ordinance, and it became an acknowledged part of the city's comprehensive plan pursuant to ORS 197.625(1).[5] The EOA includes a "Technical Appendix"
*328 that contains a "Subregional Commercial Land Need Analysis." That analysis divides the Klamath Falls area into four subregions that extend out from the city and existing UGB into rural lands outside the UGB: Klamath West, Klamath North, Klamath East, and Klamath South. The EOA identifies a deficit of the land in the Klamath West subregion to satisfy short-term (five year) commercial demand.[6]
Badger Flats owns a parcel of land outside, but adjacent to, the Klamath Falls UGB in the Klamath West subregion. Badger Flats applied for a UGB amendment to add 22.7 acres of its land to the UGB, seeking to eventually construct "Badger Flats Lifestyle Center" on that land. As noted, in 2017, the city approved the UGB amendment.
DCLD appealed the city's decision to LUBA, raising several assignments of error. Although LUBA accepted a number of DLCD's contentions on appeal, it rejected others. As relevant here, in its first assignment of error before LUBA, DLCD asserted, in part, that "absent a demonstration that the City's 20-year need for commercial land cannot be met in its existing UGB, amending an urban growth boundary for a 'subregional short-term need for additional commercial land' is not in compliance with the statewide planning goals," specifically, Goal 14. LUBA rejected that contention, stating that it declined "to adopt the categorical rule that DLCD urges us to adopt-that a lack of a 20-year need under Goal 14 need factor 1 categorically precludes a UGB amendment to correct a short-term subregional need." According to LUBA, such a categorical rule "is not clearly expressed in the text of Goal 14 or OAR chapter 660, division 24." Relying on Baker v. Marion County , 120 Or. App. 50, 852 P.2d 254, rev. den. , 317 Or. 485, 858 P.2d 875 (1993), overruled on other grounds by Milne v. City of Canby , 195 Or. App. 1, 96 P.3d 1267 (2004), LUBA held that
"the city might be required [to] give appropriate consideration and weight to the fact that there is an abundant supply of land to satisfy the city's 20-year need for urban land, but the fact that the city has an adequate 20-year supply does not categorically foreclose a finding that a UGB amendment is justified to correct a short-term subregional shortage of land."
In its first assignment of error on review, DLCD contends that "LUBA erred in ruling that Goal 14 and OAR chapter 660, division 24, do not require a local government to base an amendment of its UGB on an identified 20-year need that cannot be reasonably accommodated on land already inside the UGB." The city and Badger Flats respond that, under Baker , LUBA did not err in concluding that the city was not categorically precluded under Goal 14 from amending its UGB, "notwithstanding that the city had a supply of land inside the UGB to meet the city's 20-year need for employment land." Thus, the question before us on review is whether, in light of Goal 14, before it expanded its UGB, the city was required to have an identified 20-year land need.[7] As explained below, we agree with DLCD that LUBA erred.
Because, in reaching its decision on this issue, LUBA relied on our decision in Baker , we begin by discussing that case. In Baker , the petitioner, who was a developer, had applied for a UGB amendment. Marion County denied the application because the petitioner had not demonstrated that the proposed UGB amendment could be justified under Goal 14. At that time, Goal 14 set forth seven factors that were to be considered in connection with the change of a UGB:
" '(1) Demonstrated need to accommodate long-range urban population growth requirements consistent with LCDC goals;
" '(2) Need for housing, employment opportunities, and livability;
" '(3) Orderly and economic provision for public facilities and services;
*329 " '(4) Maximum efficiency of land uses within and on the fringe of the existing urban area;
" '(5) Environmental, energy, economic and social consequences;
" '(6) Retention of agricultural land as defined, with Class I being the highest priority for retention and Class VI the lowest priority; and
" '(7) Compatibility of the proposed uses with nearby agricultural activities.' "
Baker , 120 Or. App. at 52-53, 852 P.2d 254 (quoting the then-extant version of Goal 14). The first two of those factors were concerned with "need," that is, "the amount of land required for urban use, and growth." Id. at 53, 852 P.2d 254. The county determined that the petitioner had not demonstrated that the amendment could be justified under those factors.
LUBA affirmed and, on review, the petitioner argued that " 'need' is established if either factor 1 or 2 is satisfied." Id. at 54, 852 P.2d 254. We rejected the petitioner's arguments for two reasons:
"[First,] contrary to [the petitioner's] understanding, LUBA concluded that the proposed amendment does not satisfy either factor. The second problem with the argument is that, even if the proposal complied with one of the two factors, that would not suffice to show need, at least without appropriate consideration of and weight being accorded to the proposal's failure to satisfy the other factor. The need factors are interdependent and, aside from his mistaken contention that compliance with either one is per se sufficient, petitioner does not argue that the county or LUBA misapplied the two factors in combination."
Id.
Here, discussing Baker , LUBA observed that, in that case,
"while the Court of Appeals rejected petitioner's argument that the second need factor alone might suffice to demonstrate need for a UGB amendment, it did not go so far as to say a failure to show need under Goal 14 factor 1 precludes a finding of need for a UGB amendment under Goal 14 factor 2. The court only held that a need justified solely under Goal 14 factor 2 would not suffice to demonstrate need for a UGB amendment without appropriate consideration of and weight being accorded to the proposal's failure to satisfy the other * * * factor."
(Internal quotation marks omitted; emphasis in original.) Based on that understanding of Baker , LUBA reasoned as follows:
"Extending and applying the rule in Baker to the question we face here, the city might be required to give appropriate consideration and weight to the fact that there is an abundant supply of land to satisfy the city's 20-year need for urban land, but the fact that the city has an adequate 20-year supply does not categorically foreclose a finding that a UGB amendment is justified to correct a short-term subregional shortage of land."
The fundamental problem with LUBA's reliance on Baker and its resulting interpretation of Goal 14 is that Baker is predicated on an earlier version of Goal 14 and the language of that earlier version of the goal is significantly different from the language of the newer version of Goal 14 applicable in this case. Indeed, as noted, under the version of Goal 14 considered in Baker , all seven Goal 14 factors-both land need and location factors-were to be "considered" in connection with the change of a UGB. Baker , 120 Or. App. at 52, 852 P.2d 254. However, that is not the case under the text of the newer version of Goal 14. And, as explained below, the text of the applicable version of Goal 14 leads us to the conclusion that, contrary to LUBA's holding, the lack of a 20-year land need precludes a local government from approving a UGB amendment.
As described above, the version of the goal we considered in Baker listed seven factors that were all to be considered in connection with a UGB amendment. However, the version of Goal 14 at issue in this case specifically sets the land need subsections apart from the location factors:
"Land Need *330 "Establishment and change of urban growth boundaries shall be based on the following:
"(1) Demonstrated need to accommodate long range urban population, consistent with a 20-year population forecast coordinated with affected local governments; and
"(2) Demonstrated need for housing, employment opportunities, livability or uses such as public facilities, streets and roads, schools, parks or open space, or any combination of the need categories in this subsection (2).
"In determining need, local government[s] may specify characteristics, such as parcel size, topography or proximity, necessary for land to be suitable for an identified need.
"Prior to expanding an urban growth boundary, local governments shall demonstrate that needs cannot be reasonably accommodated on land already inside the urban growth boundary.
"Boundary Location
"The location of the urban growth boundary and changes to the boundary shall be determined by evaluating alternative boundary locations consistent with ORS 197.298 and with consideration of the following factors:
"(1) Efficient accommodation of identified land needs;
"(2) Orderly and economic provision of public facilities and services;
"(3) Comparative environmental, energy, economic and social consequences; and
"(4) Compatibility of the proposed urban uses with nearby agricultural and forest activities occurring on farm and forest land outside the UGB."
(Boldface in original; emphases added.)
Thus, although the location of the UGB and changes to it are to be determined "with consideration of" the location factors, the issue of land need is addressed differently. Under the plain text of the goal, the change of a UGB must be based on both a 20-year need under subsection (1) and a need for housing, employment opportunities, livability or uses such as public facilities, streets and roads, schools, parks or open space under subsection (2). In contrast with the location factors, which must all be considered in determining changes to a UGB, the plain text of the goal requires that, to change a UGB, there must be a demonstrated need for land under both of the land-need subsections. See Friends of the Columbia Gorge v. Columbia River, 346 Or. 415, 426, 212 P.3d 1243 (2009) (in ordinary usage, "shall" creates a mandatory duty); State v. Clements , 265 Or. App. 9, 19, 333 P.3d 1177 (2014) (" 'to base' means 'to use as a base or basis for' " and a " 'base,' in turn, may refer to 'the fundamental part of something' "; "based on" can be understood to mean "must be founded on"). Furthermore, the text of the goal explicitly requires that, prior to expanding a UGB, local governments shall demonstrate that "needs," which we understand to refer to the needs described in both subsections (1) and (2), cannot be reasonably accommodated on land already inside the UGB.[8] We agree with DLCD that the text of the land need portion of the goal, read in context of the goal as a whole, makes clear that, before making a change to a UGB, there must be a demonstrated need under both subsections (1) and (2) of Goal 14.[9] Thus, we conclude that LUBA
*331 erred in holding that "the fact that the city has an adequate 20-year supply of land does not categorically foreclose a finding that a UGB amendment is justified."
On cross-petition, reversed and remanded. On petition, judicial review dismissed.

"A UGB is the part of the land use map in a city's comprehensive plan that demarcates the area around a city that is available for expansion and future urban uses." 1000 Friends of Oregon v. LCDC , 244 Or. App. 239, 241, 259 P.3d 1021 (2011).

Originally, the city and Badger Flats petitioned for review of LUBA's final order and DLCD filed a cross-petition for review. Before briefing and argument, the parties filed a stipulated joint motion requesting that we hold the petition for judicial review in abeyance, but allow DLCD's cross-petition to go forward to briefing and decision. In October 2017, we granted the motion, ordering that
"Petitioners' petition for judicial review is held in abeyance pending the outcome of DLCD's cross-petition. If DLCD prevails on judicial review of its cross-petition, then petitioners' petition for judicial review will be dismissed."
Because, as explained below, DLCD does prevail on judicial review of its cross-petition, the city and Badger Flats's petition is dismissed.

Our resolution of DLCD's first assignment of error obviates the need to address its second assignment.

Although Goal 14 was amended effective January 1, 2016, it is undisputed that the version of Goal 14 that became effective on April 28, 2006, is applicable in this case. All references to Goal 14 in this opinion are to the version of the goal in effect on April 28, 2006. It is also undisputed that the version of OAR chapter 660, division 24, that applies is the version in effect prior to the January 1, 2016, amendments.

ORS 197.625(1) provides:
"A local decision adopting a change to an acknowledged comprehensive plan or a land use regulation is deemed to be acknowledged when the local government has complied with the requirements of ORS 197.610 and 197.615 and either:
"(a) The 21-day appeal period set out in ORS 197.830(9) has expired and a notice of intent to appeal has not been filed; or
"(b) If an appeal has been timely filed, the Land Use Board of Appeals affirms the local decision or, if an appeal of the decision of the board is timely filed, an appellate court affirms the decision."

As LUBA observed, the EOA is dated July 21, 2009, and that short-term demand estimate presumably extended from July 21, 2009 through July 21, 2014. However, the UGB amendment at issue in this case occurred several years past that time period.

As noted, it is undisputed that the urban area within the city's UGB has adequate capacity to meet the city's urban land needs for the next 20 years.

As DLCD also points out, under OAR 660-024-0040(1), a UGB amendment "must be based on the appropriate 20-year population forecast for the urban area" and "must provide for needed housing, employment and other urban uses such as public facilities, streets and roads, schools, parks and open space over the 20-year planning period consistent with the land need requirements of Goal 14." Furthermore, under OAR 660-024-0050, when amending a UGB, a local government must inventory the land inside the UGB to determine whether there is adequate capacity to accommodate 20-year land needs and, "[p]rior to expanding the UGB, the local government must demonstrate that estimated needs cannot reasonably be accommodated on land already inside the UGB."

We further note that, as discussed by DLCD, the history of the amendment to Goal 14 confirms that a 20-year need for land under subparagraph (1) of the goal is a prerequisite to changing a UGB. The summary of the changes to the goal prepared for the December 8, 2004, public hearing before the LCDC regarding the changes to Goal 14 makes clear that the amendment
"clarifies that local governments do not just 'consider' the [need] factors, they must base any UGB amendment decision on all [of the] 'need factors', and UGB decisions must be consistent with all these factors. The proposed rule * * * provides additional detail regarding this requirement, and makes it clear that, unlike the 'location factors,' the 'need factors' are not weighed and balanced with each other; they all apply."
LCDC Staff Memorandum, Dec. 8, 2004, at 11 (underscoring in original).